[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11467
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-03835-JOF

MELANIE SMALLWOOD,

                                        Plaintiff - Appellant,

versus

EDWIN F. AINSWORTH,
Cobb County Police Officer - In his individual capacity,

                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(October 16, 2013)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Melanie Smallwood appeals the district court's grant of defendant Edwin Ainsworth's motion for summary judgment. Pursuant to 42 U.S.C. § 1983, Smallwood filed suit against Cobb County Police Officer Ainsworth, alleging that he violated her Fourth Amendment right to be free from unreasonable seizure when he arrested her for driving under the influence without probable cause. The district court granted Ainsworth's motion for summary judgment, finding that no constitutional violation took place. The district court also found that even if a constitutional violation had occurred, Ainsworth would be entitled to qualified immunity. Smallwood now appeals.

I.

The facts are as follows. On November 8, 2009, Officer Ainsworth, a 20-year veteran of the Cobb County Police Department, was on duty and received information from another officer about a possible impaired driver. The time was 2:00 a.m. As a result of this information, he began following Smallwood's vehicle, which matched the reporting officer's description of the possible impaired driver: a light colored minivan driving erratically westbound on Macland Road in Cobb County, Georgia. Ainsworth testified that he observed Smallwood swerve and sway in her lane, once almost striking the curb. Smallwood denies driving in such a manner. Ainsworth followed Smallwood for some time and after he again

2

observed her car touch the divider lines he determined that he had probable cause to pull her over for a traffic stop.

After Ainsworth pulled Smallwood over, he approached her car to speak with her. When Smallwood rolled down her window, Ainsworth detected an odor of alcohol. Ainsworth asked whether Smallwood had been drinking. She denied having had anything to drink, informed Ainsworth that she had taken cough medicine, and suggested that the medicine might be what Ainsworth smelled.

Ainsworth stated that Smallwood's eyes were bloodshot and watery. In addition, she swayed back and forth when she exited the vehicle in order to complete the field sobriety tests. Ainsworth conducted three different field sobriety tests. First, Ainsworth conducted the horizontal haze nystagmus test. This test scores each eye for a maximum of six clues to detect impairment. Based on his training and experience, Ainsworth determined that Smallwood tested positive for all six clues. He next administered the "walk and turn" field sobriety test. This test produces eight clues of impairment, and Ainsworth determined that Smallwood was positive for two clues, enough to constitute failure. Last, Ainsworth administered the "one-leg stand" field sobriety test, which evaluates coordination and balance. Smallwood indicated positive for two of the six clues for impairment. Ainsworth then arrested Smallwood for driving under the influence.

3

Ainsworth transported Smallwood to the Cobb County Adult Detention Center and administered a breathalyzer test. Smallwood blew a 0.03, which was below the legal limit. Ainsworth then informed Smallwood that while she was not charged with driving under the influence, she was charged with reckless driving and failure to maintain her lane. Smallwood remained at the Cobb County jail for four hours and bonded out with a $400 to $550 bond. The charges were eventually dismissed for insufficient proof.

Smallwood brought suit alleging Ainsworth violated her Fourth Amendment right to be free from unreasonable seizure. She also brought state law claims for negligence, false arrest and/or imprisonment, and malicious prosecution. Ainsworth moved for summary judgment, arguing that the stop and arrest did not amount to a constitutional violation, and alternatively, suit was barred based on qualified immunity. The district court granted Ainsworth's motion for summary judgment.

## II.

"We review de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of [the plaintiff] and then answering the legal question of whether [the defendant is] entitled to qualified immunity under that version of the facts." *Case v. Eslinger*,

555 F.3d 1317, 1324–25 (11th Cir. 2009) (internal quotation marks and emphasis omitted).

"Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003). It offers complete protection for government officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). We have often said that qualified immunity "protect[s] from suit all but the plainly incompetent or one who is knowingly violating the federal law." *E.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).

Once an official demonstrates that he was performing a discretionary function, the plaintiff bears the burden to prove that qualified immunity does not insulate the official from liability. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). The parties do not dispute that Ainsworth was engaged in a discretionary function when he made the arrest in this case; Smallwood therefore

5

shoulders the burden of proving that Ainsworth does not enjoy qualified immunity protection.  This she cannot do.

In determining whether an officer is qualifiedly immune, we undertake a two-part inquiry, asking: (1) whether the facts, taken in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right of the plaintiff; and (2) whether the right allegedly violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).  Finally, we are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

Here, Smallwood alleges that Ainsworth violated her constitutional rights because there was no probable cause to pull her over for a traffic violation. Probable cause is "a standard well short of absolute certainty." *Los Angeles County v. Rettele*, 550 U.S. 609, 615, 127 S. Ct. 1989, 1993 (2007).  "Th[e] standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent

person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee*, 284 F.3d at 1195 (internal quotation marks omitted). "Probable cause requires more than mere suspicion, but does not require convincing proof." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). The probable cause analysis is undertaken in light of the totality of the circumstances, and the standard "must be judged not with clinical detachment[] but with a common sense view to the realities of normal life." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (quoting *Wilson v. Attaway,* 757 F.2d 1227, 1235 (11th Cir. 1985)).

## III.

Looking at the totality of the circumstances, Ainsworth had probable cause to stop Smallwood and arrest her on suspicion of impaired driving. Ainsworth testified that: (1) he observed Smallwood's car swerve in her lane and almost hit a curb; (2) when he approached the car and Smallwood rolled down her window, he smelled alcohol; (3) Smallwood's eyes were bloodshot and watery, and she swayed when she exited the vehicle to perform the field sobriety tests; and (4) when he administered the field sobriety tests, Smallwood exhibited several of the clues that indicate impairment. Because Ainsworth had probable cause to stop and then arrest Smallwood on suspicion of impaired driving, there was no constitutional

7

violation.  The district court, therefore, properly granted Ainsworth's motion for summary judgment as to the federal constitutional claims.

The district court also properly granted summary judgment as to Smallwood's allegations of state law claims.  "A suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer (1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty."  *Tant v. Purdue*, 629 S.E.2d 551, 553 (Ga. Ct. App. 2006) (internal quotation marks omitted).  Neither party disputes Ainsworth was performing a discretionary duty when he stopped Smallwood and arrested her for impaired driving.  Smallwood's state law claims fail, however, because Ainsworth did not do so with malice or intent to cause injury.  *See id.*

**AFFIRMED.**

8