**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 1, 2014**

# In the Court of Appeals of Georgia

A14A0292. DAVIS et al. v. EFFINGHAM COUNTY BOARD OF
     COMMISSIONERS et al.

BOGGS, Judge.

Theron and Dana Davis brought this action against the Effingham County Board of Commissioners, Sheriff Jimmy McDuffie, Deputy Gary Provost ["the County defendants"], two private contractors, and one of their employees, for damages they allegedly suffered when Mr. Davis' truck struck a pothole on a county-maintained road. The trial court granted summary judgment in favor of the County defendants, and the Davises appeal, asserting that the trial court erred in (1) granting summary judgment to the county, to the sheriff in his official capacity, and to the deputy in his individual capacity; (2) ruling that the deputy did not breach a ministerial duty; (3) ruling that the deputy's actions were discretionary; and (4) ruling

that a claim for continuing nuisance did not lie. For the reasons explained below, we affirm.

"On appeal from the denial of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010); see OCGA § 9-11-56 (c).

> A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The County defendants filed with their motion for summary judgment an affidavit from Deputy Provost. He asserted that on May 22, 2009, he responded to a call from an individual who reported that she had driven over a pothole on Chimney

2

Road that caused damage to her car.[1] The deputy inspected the road and found that "the only visible potholes were to the right of the white lines of the roadway and, thus, on the shoulder of the roadway and out of the flow of traffic." Nevertheless, the deputy reported the potholes to dispatch and requested that a work order be placed with road maintenance "to fix any potholes along Chimney Road as soon as possible."

In an affidavit filed the day before the hearing on the County defendants' motion for summary judgment, Mr. Davis testified that on May 25, 2009, he was driving on Chimney Road when he struck a pothole that was covered by water on the roadway. He "was injured, immediately suffering pain." He testified that the pothole "was located on the edge of the road but extended into the lane of Chimney Road." He further testified that he drove regularly on Chimney Road, and that there were "no other potholes" on Chimney Road at that time or "for at least a week before and after that day."[2]

---

[1]This individual did not testify by affidavit or otherwise. The Davises' assertion that the driver "pointed out" the pothole to Deputy Provost is unsupported by the record.

[2]While the Davises assert that the same pothole Mr. Davis struck was observed by the deputy, the record does not support that assertion. The first driver reported a pothole "on Chimney Road;" the deputy testified that he inspected Chimney Road, which is approximately two miles long, and located several potholes on the shoulder of the road. The first driver did not testify, and there is no testimony in the record

On May 29, 2009, another deputy responded to a call at the Davises' home. She testified that Mr. Davis reported he had hit a pothole on Chimney Road on May 25 "during an instance of flooding on the roadway." She agreed that "on the night of the alleged incident, there was widespread flooding on the roadway." After taking the report, she drove slowly down Chimney Road looking for the pothole, but "was unable to find any potholes along the roadway."

The Effingham County Sheriff's Department maintains written departmental standard operating procedures. These procedures give guidance to deputies in the case of road hazards:

18. Road Hazards
Deputies shall report any road hazards to the communications center and stand by with the hazard until assistance can be obtained to correct the problem so that citizens are not injured. The following are considered road hazards:

a. Damaged or malfunctioning traffic control device
b. Visually obscured intersections
c. Roadway defects
d. Lack of, damaged or missing roadway signs or safety devices

---

regarding the location of the pothole she encountered. Mr. Davis insists that the pothole struck by his vehicle was in the lane of travel, but points to no evidence that the deputy observed the pothole that he struck, or that it was present three days earlier.

Deputies should not limit road hazards as just that listed above [sic], he/she should evaluate each situation independently.

After a hearing and supplemental briefs from the parties, the trial court held that the Davises' personal injury claim stated no claim for nuisance,[3] that their suit against the county and against the sheriff and deputy in their official capacities was barred by sovereign immunity, and, finally, that their negligence claim against the sheriff and deputy in their individual capacities was barred by official or derivative immunity. This appeal followed.[4]

1. (a) A negligence claim against the state or its subdivisions, including counties, is barred unless waived by statute. OCGA § 36-1-4; *Rutherford v. DeKalb County*, 287 Ga. App. 366 (1) (651 SE2d 771) (2007). And "immunity from suit is a

---

[3]The trial court was incorrect in its observation that the Davises did not make a claim for property damage; although their complaint primarily alleged substantial and continuing personal injuries and related special damages, it also recites that Mr. Davis' vehicle was damaged in an unspecified manner. But, as explained below, the court correctly concluded that no action for nuisance lies under the facts presented here.

[4]As the County defendants point out, the Davises do not enumerate as error a number of rulings by the trial court in its order. They do not contest the grant of summary judgment to the sheriff in his individual capacity or to the deputy in his official capacity, and Dana Davis concedes that she failed to provide ante litem notice to the county. They also acknowledge that the county is immune from personal injury claims sounding in nuisance.

privilege that is subject to waiver by the State, and the waiver must be established by the party seeking to benefit from the waiver." (Citations and punctuation omitted.) *Bulloch County School Dist. v. Dept. of Ed.*, 324 Ga. App. 691, 693 (1) (751 SE2d 495) (2013). Moreover, with respect to claims against the sheriff and deputy in their official capacities, such claims "are, in essence, claims against [the county] and [the sheriff and deputy] may raise any defense available to the county, including sovereign immunity." (Citations omitted.) *Gilbert v. Richardson*, 264 Ga. 744, 746 (2) n.4 (452 SE2d 476) (1994).

"Normally, a county is not liable to suit for any cause of action unless made so by statute. This includes actions brought under a theory of negligence as well as actions brought under a theory of nuisance, unless, of course, the alleged nuisance amounts to a taking of private property for public purposes." (Citations and punctuation omitted.) *Early County v. Fincher*, 184 Ga. App. 47, 49 (2) (360 SE2d 602) (1987). Here, the Davises allege a nuisance claim against the Board of Commissioners and the Sheriff in his official capacity.

> A county may be liable to an owner in damages *to property*, either real or personal, through inverse condemnation by a nuisance, created, maintained, or worsened by such county. The measure of damages in such cases is the same as in condemnation cases. The reason sovereign

6

immunity is not applicable when a nuisance amounts to a taking of property of one of its citizens for public purposes is that inverse condemnation is a form of eminent domain.

(Citations and punctuation omitted; emphasis supplied.) *Howard v. Gourmet Concepts Intl.*, 242 Ga. App. 521, 524 (3) (529 SE2d 406) (2000). As the Davises have conceded, this exception is limited to property damage and does not extend to personal injuries. "Sovereign immunity bars any action for personal injury or wrongful death against a county arising from nuisance or inverse condemnation." (Citations and punctuation omitted.) *Rutherford v. DeKalb County*, 287 Ga. App. 366, 369 (2) (651 SE2d 771) (2007).

(b) In considering property damage alleged to have been caused by a nuisance, "mere negligence is insufficient to constitute a nuisance that rises to an inverse condemnation. . . . To be liable for a nuisance, a county must perform 'a continuous or regularly repetitious act, or create a continuous or regularly repetitious condition' that caused the harm. A single act of negligence is insufficient." (Citations and footnotes omitted.) *Morris v. Douglas County Bd. of Health*, 274 Ga. 898, 899 (1) (561 SE2d 393) (2002). Moreover,

> [t]he whole idea of *nuisance* is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or

7

injury. A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated. The injury complained of here is more in the nature of a tort or a trespass inflicting in one act a direct injury and damage (even though in effect one of more or less lasting duration) . . . as distinguished from the maintenance of a nuisance where the injury complained of is the result of a continuous or recurrent act or condition and is of an indirect character. Thus, [the] property was damaged by a single malfunction in the operation of the public works project and was not damaged by a nuisance arising from a public project created and maintained for a public purpose.

(Citations and punctuation omitted; emphasis in original.) *Desprint Svcs. v. DeKalb County*, 188 Ga. App. 218, 220 (2) (372 SE2d 488) (1988). And "[a]s a matter of law, the post-construction non-nuisance damage done to private property by a single malfunction in the operation of a public works project is not damage which has been done for a 'public purpose.' [Cit.]" Id. at 220 (3).

The Davises have alleged only that a pothole appeared in an existing roadway, without the direct intervention of any defendant, and at most within a few days. As a result, on a single occasion, Mr. Davis' truck struck the pothole and was damaged in an unspecified manner. This is a "single isolated occurrence," id. at 220 (2), which does not amount to a nuisance or to inverse condemnation of Mr. Davis' truck for a

8

public purpose. The trial court did not err in granting summary judgment on the Davises' claims of inverse condemnation and nuisance.

2. The Davises also complain that the trial court erred in granting summary judgment to Deputy Provost in his individual capacity on the basis of official immunity.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Citations and punctuation omitted.) *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010). And

> [a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in

9

turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citations omitted.) Id. "The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." (Citation and punctuation omitted.) *Vann v. Finley*, 313 Ga. App. 153, 159 (1) (721 SE2d 156) (2011).

Here, the sheriff's department standard operating procedures require that deputies employ their discretion in order to determine whether a "road hazard" exists. While the procedures enumerate examples of such "road hazards," they add that deputies "should evaluate each situation independently." This standard requires "a discretionary act, i.e., to exercise personal deliberation and judgment by examining the facts and reach a reasoned conclusion with regard to the applicability of the dictates of the written policy. Where the written policy requires the public official to exercise discretion in the implementation of the written policy, the policy does not require the performance of a ministerial duty." *Grammens*, supra, 287 Ga. at 621 (written policy requiring eye protection when students use "explosive materials"

10

required discretion because that term was not defined, requiring teacher to determine if policy applied.)

Citing decisions in which the absence of "any procedures or instructions with regard to road maintenance or repair" precluded the establishment of a ministerial duty, the Davises appear to argue the reverse: that the mere existence of a written policy creates a ministerial duty. This is incorrect. Lack of proof of *any* standard – whether written or unwritten – obviously precludes establishment of a ministerial duty or its breach. *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013). But even if a written policy is shown, it must provide "procedures or instructions . . . so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Citation and punctuation omitted.) Id. at 115, citing *Effingham County v. Rhodes*, 307 Ga. App. 504, 507 (3) (705 SE2d 856) (2010).

As in *Grammens*, here the written policy required the deputy to exercise his discretion in implementing the policy. In determining whether the pothole reported by the first driver constituted a "roadway defect" within the meaning of the official policy, the deputy inspected Chimney Road and located potholes outside the fog line, not in the lane of travel. Using his "personal deliberation and judgment," he determined that they were not a "roadway defect," and therefore not a "road hazard."

11

The shoulder area outside the fog line is not considered part of the "roadway." See *Payne v. State*, 275 Ga. 181, 183 (2) (563 SE2d 844) (2002) ("roadway" defined as "'that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder.'")

The Davises attempt to distinguish *Grammens* by contending that the department procedures require specific actions whenever a "road defect" is encountered. But in order to make this argument, the Davises misstate the language of the document, repeatedly quoting it as "road defect" rather than "roadway defect," in order to claim that there is "no differentiation" between a "road defect" in the lane of travel and a "road defect" outside the roadway. See *Payne*, supra. In addition, the Davises' reply brief incorrectly claims that appellees did not interpose a causation defense below. But we do not reach that issue because of our holdings on sovereign and official immunity.

The trial court did not err in granting summary judgment in favor of Deputy Provost on the grounds of official immunity.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*